IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEFFREY PRESTON MCCLUNG           *
             Petitioner
    v.                                *    CIVIL ACTION NO. WDQ-02-3557

BOBBY P. SHEARIN, WARDEN       *
             Respondent.
                                    ***

## **MEMORANDUM**

Petitioner, a U.S. Bureau of Prisons ("BOP") inmate confined at the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland"), filed this 28 U.S.C. § 2241 Petition for writ of habeas corpus, seeking to vacate and expunge a disciplinary finding of guilt and to restore 41 days good conduct time ("GCT") lost as a result of a disciplinary sanction in September 2001.[1] On May 30, 2003, this Court granted the Respondent's Motion to Dismiss or, in the Alternative, for Summary Judgment.

The United States Court of Appeals for the Fourth Circuit upheld the dismissal of Petitioner's due process claims regarding the withholding of informant information and the procedural aspects of the adjustment hearing. *McClung v. Shearin*, 90 Fed. Appx. 444, 2004 WL 225093 (4th Cir. Feb. 6, 2004). It held, however, that this Court failed to address the issue of "constructive possession" as determined by BOP policy,[2] and its relationship to the "some evidence" standard given Petitioner's allegation that: (i) when he was given his incident report his cell was

---

[1] According to Petitioner, on September 1, 2001, an FCI-Cumberland unit officer searched the cell he shared with inmate Richard Stach and found a prison-made knife. The two inmates were charged with possessing a dangerous weapon and subsequently convicted and sanctioned by Disciplinary Hearing Officer ("DHO") Curtis Hise with the loss of GCT and 30 days disciplinary segregation.

[2] Under 28 U.S.C. § 541.12, it is each inmate's responsibility to keep his area free of contraband.

unlocked and therefore accessible by other inmates; and (ii) 130 inmates had access to his cell.[3]  *Id*. at 446.  The Fourth Circuit stated that "constructive possession provides 'some evidence' of guilt only when relatively few inmates have access to the area,"[4] and indicated Respondent "provided no evidence whatsoever regarding the accessibility of McClung's cell."  *Id*.  The Fourth Circuit remanded the case for further proceedings solely as to Petitioner's claim of the alleged accessibility of 130 other inmates to his cell.

Petitioner's subsequent request for rehearing en banc was denied by the Fourth Circuit.  Respondent's renewed and opposed Motion to Dismiss or, in the Alternative, for Summary Judgment was denied without prejudice on February 9, 2005.  Counsel was appointed to represent Petitioner.  Pursuant to court order, a schedule was entered which provided for the completion of written discovery and deposition.  Discovery was to be completed by October 1, 2005, and an evidentiary hearing is scheduled for December 5, 2005.

On September 24, 2005, Respondent filed a Motion for a Protective Order.  Paper No. 36.  He seeks to bar "disclosure of correctional officer's home addresses, telephone numbers and dates of birth from any materials, including deposition transcripts, provided to anyone, including Plaintiff

---

[3]  Petitioner's allegations regarding secured cells and accessibility of other inmates were not raised at the disciplinary hearing.  His Petition for habeas relief did claim that: (i) the "cells at FCI-Cumberland cannot be locked by their occupants and that any prisoner could and can enter another prisoner's cell easily unnoticed;" and (ii) the "cells at FCI-Cumberland are not secure from intrusion and that planting of contraband has occurred in the past."  Paper No. 1 at 18-19.  In an administrative appeal to the U.S. Bureau of Prisons, Petitioner made passing reference to whether "an inmate is responsible for contraband found in a common area while doors are left unlocked and he is at work."  *Id*. at Attachment.  The Petition, however, focused on an allegation that FCI-Cumberland inmate informant Odom planted the weapon.  Any particularized allegation regarding access to the cell by 130 inmates was apparently raised for the first time in Petitioner's informal appeal brief.

[4]  The Fourth Circuit cited *Broussard v. Johnson*, 253 F.3d 874 (5th Cir. 2001) and *Hamilton v. O'Leary*, 976 F.2d 341 (7th Cir. 1992) which involved contraband found in common areas of a prison facility.

Mr. McClung...."[5]  Paper No. 36.  Petitioner has filed a Response to the Motion.  Paper No. 37.  He does not contest the grounds set forth in Respondent's Motion but opines that he must be able to obtain information on home addresses and other identifying information on FCI-Cumberland staff, for purposes of locating and serving subpoenas on these witnesses, if they are to be called at the evidentiary hearing.[6]  *Id*.   In reply, Respondent's counsel notes that she has provided three correctional officers for their depositions, without subpoenas or service of notices.  Paper No. 39.  Respondent's counsel indicates that: (i) she will accept witness subpoenas on behalf of the three correctional officers who have been deposed if they are still employed by FCI-Cumberland when the subpoenas are issued; and (ii) if the three correctional officers are no longer employed at FCI-Cumberland when subpoenas are to be issued, Petitioner's counsel would  "request the home addresses as known at that time" by the [Respondent] for service of the subpoenas as long as the addresses were not disclosed to the [Petitioner] or anyone who did not need to have the addresses to serve the subpoenas."  *Id*.

Respondent's Motion for Protective Order shall be granted.  All references to the home addresses, telephone numbers, and dates of birth of Correctional Officers Strain, Biser, and

---

[5]   According to Respondent, on September 22, 2005, three correctional officers were deposed at FCI-Cumberland and, during their depositions, Petitioner's counsel asked each officer to state their address and date of birth.  Paper No. 36.  Two of the officers stated their home addresses and all three officers stated their dates of birth.  At the conclusion of the depositions, it was realized that the deposition transcripts would contain the officers' home addresses, telephone numbers, and dates of birth and would then be provided to the inmate Petitioner.  *Id.*  Respondent claims that for safety and security purposes, none of that sensitive information should be provided to any inmate at FCI-Cumberland, and in particular to inmate McClung.  He cites 5 U.S.C. §§ 552a & 552(b)(7)(c).  Respondent indicates that Petitioner's counsel would not consent to the protective order motion unless Respondent's counsel personally guaranteed each officers' appearance at the December, 2005 evidentiary hearing.

[6]   Petitioner asserts that if Respondent will stipulate to the appearance of the three officers at the evidentiary hearing upon Petitioner's request, he will fully consent to the Motion for Protective Order.  Paper No. 37.

McClusker set out in the depositions shall be redacted. In addition, all notes prepared by Petitioner's counsel and paralegal which reference the aforementioned information of the Officers shall not be divulged to anyone under any circumstances, including Petitioner. Respondent's counsel shall accept witness subpoenas on behalf of the three correctional officers if they are employed by FCI-Cumberland when the subpoenas are issued and, if the three correctional officers are no longer employed at FCI-Cumberland when subpoenas are to be issued, Respondent's counsel shall, upon request, provide Petitioner's counsel with known addresses for service of the subpoenas.[7]

In addition, on November 4, 2005, Petitioner filed a Motion to Compel Discovery and a Request for a Hearing on the Motion to Compel. Paper Nos. 42 & 43. Petitioner claims that the parties have not been able to resolve a dispute regarding Respondent's answers to interrogatories 3[8] and 18.[9] Paper No. 42. Petitioner indicates that Respondent's Answer does not identify all cells, corridors, common areas, officer stations, offices, and other rooms/areas within the Unit and that the Answer is devoid of measurements of the Unit or dimensions of (or distances between) any

---

[7] Petitioner's counsel filed a Fed. R. Civ. P. 26(a)(3) statement on November 4, 2005, listing the three officers as expected witnesses. Paper No. 44.

[8] In interrogatory 3, Petitioner requested a diagram or a detailed description, i.e., geometry, layout, and dimensions of Unit A, including Units A-1 and A-2. Respondent provided a general description of Unit A-1, where Petitioner was housed on September 1, 2001, the date on which contraband was found in his cell. Warden Shearin, however, objected to the interrogatory on the basis of relevance with regard to the diagram of Unit A-2. He claims that Unit A-1 and Unit A-2 are separate units with cross-over doors, and that access through these doors to each side of Unit A is restricted to staff members. Respondent also objected to the production of a diagram of the geometry, layout, and dimensions of Unit A-1 and informed Petitioner's counsel that he may request a tour of the Unit A-1.

[9] In interrogatory 18, Petitioner requested a description of each incident in Unit A, whether proved or alleged, of theft, intentionally set fires, and/or assaults occurring in the cell of an inmate, during the period between January 1, 2001, though December 31, 2001. Respondent objected to this interrogatory on the basis of relevance, indicating that there "have been no allegations regarding theft, fire, or inmate assaults set forth in Petitioner's Complaint."

individual Unit features.[10]   He further states that Respondent did not answer his request for information on all thefts, fires, and assaults occurring in the cells of inmates in Unit A-1 during 2001.

Petitioner seeks to compel a diagram of Unit A-1.  He claims that to effectively prosecute this case he must be given the ability to put forth evidence regarding *inter alia* the location of all cells, officer stations, common areas, and all other rooms/areas located within Unit A-1.  In addition, Petitioner seeks to compel information on all thefts, fires, and assaults occurring in the cell of an inmate in Unit A-1 during calendar year 2001.  He indicates that such information would shed light on all "occasions on which an inmate gained access to the cell of another inmate, and therein committed a theft, assault or ignited a fire," and that such information is relevant to the issues in this case.

For reasons which follow, the Motion to Compel shall be granted in part and denied in part.  According to Respondent, the BOP does not provide drawings of their units/facilities for safety and security reasons.   Respondent notes that: Petitioner has been housed in Unit A-1 for six years; Correctional Officers Strain, Biser, and McClusker provided lengthy deposition testimony concerning the sight lines of Unit A-1 and drew several drawings of Unit A-1;[11] and Petitioner's counsel has been offered the opportunity to tour the prison to see the layout of Unit A-1. Moreover, Respondent provided the following relevant interrogatory response:

---

[10]   Petitioner's Motion to Compel only pertains to Unit A-1, and he indicates that if the architectural plans contain any specific information that could not be revealed for security reasons, then appropriate redactions could be made by the Respondent.   Paper No. 42.

[11]   Officers Shane Biser, Shawn McCusker, and Donald Strain, who were assigned to Petitioner's housing unit on September 1, 2001, provided approximately eight sketches of Unit A-1.

Unit A-1 at FCI-Cumberland has two floors. Unit A-1 at FCI Cumberland is structured so that all of the cells are visible from the Officer's Station, which is located on the first floor of the unit. The Officer's Station is in the center of the housing unit on the first floor. There is one common area in the unit. This common area is on the first floor and surrounds the Officer's Station. The common area is open to the second floor. There are thirty (30) cells on the first floor of Unit A-1 and thirty-four (34) cells on the second floor of Unit A-1. The cells are arranged in a triangle forming the perimeter of the unit. On September 1, 2001, Petitioner was housed in cell 122. Cell 122 is located approximately ten (10) yards directly in front of the Officer's Station on the first floor of the unit.

The Court finds that: given the issues for the evidentiary hearing ; the discovery available to and furnished to Petitioner; and the legitimate security concerns of the U.S. Bureau of Prisons, Respondent shall provide a diagram of Unit A-1 to the Court, which shall be placed under seal as exhibit evidence. Counsel shall be furnished a copy of the diagram, but shall not provide a copy to Mr. McClung and shall return the exhibit to Respondent when the case is concluded.

Petitioner's request for information on all thefts, fires, and or assaults for the 2001 calendar year, shall be denied. Respondent indicates that there is no record of any existing report regarding such incidents and that Petitioner's counsel elicited deposition testimony from the three correctional officers regard incidents of fires, thefts, and assaults. The gravamen of Petitioner's case is that an inmate entered his cell without permission and planted a "shank." Incidents of fires, thefts, and assaults, are not–and would not necessarily lead to– evidence of unauthorized entry by one inmate into another's cell. The request is irrelevant and overly broad. Further, the record shows that Petitioner's particularized interrogatory about the number of documented code violations for unauthorized cell entries was answered.

     For the aforementioned reasons, Respondent's Motion for Protective Order will be granted, Petitioner's Motion to Compel Discovery will be granted in part and denied in part, and Petitioner's Motion for a Hearing will be denied.

Date: <u>November 9, 2005</u>                      <u>        /s/               </u>
                                                     William D. Quarles, Jr.
                                                     United States District Judge